Filed 12/13/21  P. v. Talmadge CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B310726 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA039399-02) |
| v. | |
| DAVID EMANUEL TALMADGE, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Reversed and remanded.

J. Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez, David E. Madeo

and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

David Emanuel Talmadge, convicted in 2002 with codefendant Nathan Sheard, of first degree murder with true findings the murder had been committed during the commission of a residential burglary and robbery, appeals the superior court's denial of his petition for resentencing pursuant to Penal Code section 1170.95[1] without issuing an order to show cause and holding an evidentiary hearing to determine his eligibility for relief. We agree the superior court erred in holding Talmadge's petition was precluded as a matter of law by the jury's felony-murder special-circumstance finding, made more than a decade before the Supreme Court's identification in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) of the factors properly considered to assess whether a defendant had been a major participant in an underlying serious felony and acted with reckless indifference to human life. The superior court also committed prejudicial error by prematurely engaging in factfinding when it determined, as alternate bases for its denial of the petition, that the record of conviction, viewed in light of the *Banks/Clark* factors, supported the jury's major participant and reckless indifference findings and further that it supported a finding Talmadge had aided and abetted the murder with the specific intent to kill. We reverse the order denying Talmadge's petition and remand with directions to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).

_____

[1]     Statutory references are to this code.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Talmadge's Felony-murder Conviction*

Our opinion affirming with minor modifications of the sentence Talmadge's judgment of conviction describes the evidence presented at his joint trial with Sheard for the murder of Sheard's elderly aunt, Gertrude Mills. (*People v. Sheard* (Dec. 3, 2003, B160886) [nonpub. opn.].)

Talmadge and Sheard shared a bedroom in the home of Sheard's father. In March 1999 the three men painted the interior of Mills's house in Altadena. During the project Sheard discovered a collection of guns in a hall closet.

On April 29, 1999 Sheard's father heard Sheard, who was speaking on the telephone to Talmadge, say "What is she going to give you that for? What does she want to loan you that for? Don't make me come all the way up there if she's not going to give it to you." Sheard then left the house, telling his father he was going to meet Talmadge at Mills's house. Sheard and Talmadge returned home after midnight.

The following day Sheard was driving Mills's automobile. At the home of a neighbor Sheard opened the car's trunk, which contained shotguns and rifles. Sheard said he had obtained the firearms from an old lady whose husband had passed away. Talmadge, who had arrived on foot, Sheard and the neighbor then drove to the home of another man, where Talmadge sold two of the shotguns.

Several days later Sheard, still driving Mills's automobile, failed to stop at a stop sign on his way to a car wash. A Burbank police officer approached Sheard at the car wash and asked for his license, registration and proof of insurance. Sheard said he did not have a driver's license and told the officer the car

belonged to a friend. The officer performed a pat search and asked for permission to search the car, which Sheard granted. The officer found a receipt from an automobile mechanic made out to Mills. A second officer, who had arrived to provide backup, discovered through a check of state records that the car belonged to Mills. Questioned about Mills, Sheard said she was his aunt, lived in Pasadena and was "on a little vacation." Sheard was arrested for driving without a license and taken into custody.

Following Sheard's arrest Los Angeles County Sheriff's deputies went to Mills's home, where they found her in the bathtub, bound and fully clothed, submerged in water with a portable heater on top of her body. An autopsy revealed Mills had sustained head injuries from multiple strikes with a blunt object and multiple rib fractures consistent with having been repeatedly kicked or stomped. The report indicated the blows may not have been immediately fatal; Mills may have drowned after being placed in the bathtub with the weight of the heater on her chest.

One of Talmadge's fingerprints was found on a glass mug in the residence. Partially smoked cigarettes with Talmadge's and Sheard's DNA were found in the house. The gun collection was missing. A safe in the kitchen was empty. In a search of Sheard's father's home officers found a pair of pants and a boot in the room Talmadge and Sheard shared that were stained with Mills's blood. A ball peen hammer, normally kept in the room, was not found during the search.

The jury at Talmadge and Sheard's joint trial convicted both men of first degree murder, first degree residential burglary and first degree residential robbery. The jury found true the special circumstance allegations the murder had occurred during

the commission of the burglary and robbery. The jury also found true the allegations Talmadge and Sheard had personally used a deadly and dangerous weapon in the commission of the murder, but found that allegation not true as to the burglary and robbery. Each man was sentenced to an indeterminate state prison term of life without parole, plus one year for the weapon enhancement. (Sentences on the burglary and robbery counts were stayed pursuant to section 654.)

We affirmed the judgments of conviction on appeal, as modified to correct minor sentencing errors,[2] holding any error in the admission of Sheard's statement during the traffic stop was harmless beyond a reasonable doubt in light of the "overwhelming evidence of Sheard's guilt," which, we explained, included that, when Sheard was questioned at the car wash, printed in the dust on Mills's car was the statement, "Gertrude, I appreciate you leaving me a car"; Sheard's DNA was found on a cigarette on the floor next to the sofa where Mills had bled profusely; and Sheard and Talmadge were selling guns stolen from Mills's house shortly after the murder. In a footnote we added, "The lack of conclusive evidence as to which defendant was the actual killer does not make the admission of Sheard's patrol-car statements prejudicial, as Sheard asserts. The People did not argue the statements were evidence that Sheard was the

---

[2]  We modified the judgment to strike one-year sentence enhancements for use of a deadly weapon on the robbery and burglary convictions that had been improperly imposed and stayed because the jury had found the allegations not true and struck the parole revocation fine because Sheard and Talmadge had been sentenced to life without parole.

5

actual killer, only that his lies to the police were evidence of unspecified 'guilt.'" (*People v. Sheard*, *supra*, B160886, fn. 6.)

We also rejected Talmadge and Sheard's argument the evidence did not support the jury's finding they had murdered Mills in the commission of the burglary and robbery, holding, "the record amply supports an inference Talmadge and Sheard formed the intent to steal Mills's property before they killed her, thus justifying the special circumstances finding."

2. *Talmadge's Petition for Resentencing*

On August 26, 2020 Talmadge, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Talmadge checked boxes on the printed form petition to establish his eligibility for resentencing relief, including the boxes stating he had been convicted under a felony-murder theory and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). The superior court appointed counsel to represent Talmadge.

The prosecutor filed a response to the resentencing petition contending Talmadge was ineligible for resentencing under section 1170.95 because, based on the jury's special circumstance findings, he was the actual killer, had the specific intent to kill or was a major participant who had acted with reckless indifference to human life during the underlying felonies. Talmadge's appointed counsel filed a reply, which emphasized there was no evidence of what actually had occurred inside Mills's home the night of the murder and argued Talmadge had made a prima facie showing of eligibility for resentencing relief and the

6

court, therefore, should issue an order to show cause and conduct an evidentiary hearing.

Following a hearing on February 4, 2021 at which counsel presented argument, the court denied Talmadge's petition. The court ruled, "Penal Code section 1170.95 is not the proper vehicle to attack the special circumstance finding by a jury in felony murder cases. . . . Petitioner must file a petition for a writ of habeas corpus in order to challenge the validity of the felony murder special circumstance finding by the jury." The court stated its legal reasoning was contained in the 10-page memorandum of decision it had issued when denying codefendant Sheard's section 1170.95 petition, an order we also reverse today. (*People v. Sheard* (Dec. 13, 2021, B308523) [nonpub. opn.].)

In addition, the court ruled, based on its review of the court record in the case, which included our opinion affirming Talmadge and Sheard's convictions on direct appeal and the trial transcript,[3] that it had determined Talmadge was factually a major participant who had acted in reckless indifference to life using the *Banks/Clark* factors and further that the court record supported a finding Talmadge aided and abetted the murder with the specific intent to kill. During the hearing the court explained it had reviewed the record "to make the argument that, factually speaking, Mr. Talmadge is actually someone who is a major participant who acted with reckless indifference to life, keeping in mind the difficulty of doing this because we don't know exactly what each person did, but I'm going to draw some inferences."[4]

---

[3] The court stated, "I read a lot, if not most, of the trial transcript, at least 70 or 80 percent of it."

[4] At one point, as the court described the multiple inferences it was making—that is, the factfinding in which it was engaged—

The court then identified in some detail various items of evidence as they arguably related to one of the *Banks/Clark* factors and concluded they supported a finding, as a matter of law, that Talmadge was ineligible for resentencing. Justifying its approach, the court observed, "I don't believe I'm making rulings on credibility, but people, I suppose, could argue about that. The court does not have to make credibility calls on witnesses to reach this conclusion. I'm instead relying on circumstantial evidence and reasonable inferences from that evidence."

Talmadge filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e)(3); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to

---

it stated, "I am prepared to infer—I don't know if an appellate court is going to agree with me without actual evidence but—that the reasonable inference . . . ."

8

the definition of the crime.  (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), requires the court to appoint counsel to represent the petitioner, if requested; [5] to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he or she is entitled to relief.  (See *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  However, "the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause. . . .  However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a

---

[5]      As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, the requirement to appoint counsel is set forth in new subdivision (b)(3) of section 1170.95, rather than subdivision (c).

credibility determination adverse to the petitioner." (*Id.* at pp. 970-971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)[6] The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

2. *Section 189, Subdivision (e)(3), and the Narrowed Felony-murder Rule*

At the time of Talmadge and Sheard's trial section 189 permitted a conviction for felony murder by imputing malice to a participant in an inherently dangerous felony, including residential burglary and robbery, that resulted in a homicide. (See *People v. Chun* (2009) 45 Cal.4th 1172, 1184.) As amended by Senate Bill 1437, section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder except under the revised felony-murder rule as set forth

---

[6]    As amended by Senate Bill No. 775, section 1170.95, subdivision (d)(3), clarifies that, "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

in section 189, subdivision (e), which requires proof of specific facts relating to the defendant's individual culpability:  The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).

The overlapping factors for assessing whether a defendant was a major participant in an underlying serious felony and acted with reckless indifference to human life for purposes of section 190.2, subdivision (d), and thus for new section 189, subdivision (e)(3), were identified by the Supreme Court in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, and reiterated most recently in *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*).  As to whether the defendant was a major participant in one of the specified felonies, the *Banks* Court listed the following factors:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Banks*, at p. 803, fn. omitted.)

As to whether a defendant acted with reckless indifference to human life, the Supreme Court has enumerated the following factors: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, 9 Cal.5th at p. 677; accord, *Clark, supra*, 63 Cal.4th at pp. 618-622.) "'"[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient."'" (*Scoggins*, at p. 677; accord, *Banks, supra*, 61 Cal.4th at p. 803.)

As the *Scoggins* Court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Scoggins, supra*, 9 Cal.5th at p. 676; accord, *Banks, supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a 'grave risk of death'"].) "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'" (*Scoggins*, at pp. 676- 677, quoting *Clark, supra*, 63 Cal.4th at p. 617.)

3. *The Superior Court Erred in Denying Talmadge's Petition Without Issuing an Order To Show Cause*

    a. *The jury's pre-*Banks/Clark *felony-murder special-circumstance finding does not preclude relief as a matter of law*

In *People v. Harris* (2021) 60 Cal.App.5th 939, 954-958, review granted April 28, 2021, S267802, we rejected the argument a jury's pre-*Banks*/*Clark* felony-murder special-circumstance finding precludes relief under section 1170.95 absent a successful challenge to the evidentiary support for the finding through a petition for writ of habeas corpus, the principal ground for the superior court's denial of Talmadge's petition for resentencing.  We also held in *Harris*, although a pre-*Banks*/*Clark* jury would have been instructed it had to find the defendant was a major participant in the underlying felony that led to the victim's death while acting with reckless indifference to human life to find the felony-murder special-circumstance allegations true, the elements now found in section 189, subdivision (e)(3), such a pre-*Banks*/*Clark* finding, without more, does not preclude relief under section 1170.95.  (*Harris*, at p. 957; see *Scoggins*, *supra*, 9 Cal.5th at pp. 673-674 ["[w]here a decision clarifies the kind of conduct proscribed by a statute, a defendant whose conviction became final before that decision 'is entitled to post-conviction relief upon a showing that his [or her] conduct was not prohibited by the statute' as construed in the decision"]; *People v. Secrease* (2021) 63 Cal.App.5th 231, 256, review granted June 30, 2021, S268862 ["[A] jury's pre-*Banks* and *Clark* special circumstance determination cannot, by itself, defeat the allegations of Secrease's petition as a matter of law.  There must also be a judicial determination of the sufficiency of the evidence

13

to support that determination, and Secrease is entitled to have it made in a section 1170.95 proceeding—under current law"].)  The Attorney General contends *Harris* was incorrectly decided but has presented no persuasive reason for us to modify our view on this issue.[7]

      b.  *The record of conviction does not establish Talmadge*
          *is ineligible for resentencing as a matter of law*

Although the jury's pre-*Banks*/*Clark* felony-murder special-circumstance findings, standing alone, does not preclude resentencing under section 1170.95, before it issued an order to show cause, the superior court was authorized to review the record of conviction to determine whether Talmadge was ineligible for resentencing under section 1170.95 as a matter of law.  (See *Lewis*, *supra*, 11 Cal.5th at p. 971.)  As a general matter, however, determining whether an aider and abettor was a major participant in the underlying felony who acted with a reckless indifference to human life is a fact-intensive inquiry, properly performed by the trier of fact following issuance of an order to show cause and an evidentiary hearing.  (Cf. *Scoggins*, *supra*, 9 Cal.5th at p. 683 [determining whether a defendant was a major participant in an underlying felony who acted with reckless indifference to life within the meaning of the special-circumstance statute "requires a fact-intensive, individualized inquiry"]; *In re Parrish* (2020) 58 Cal.App.5th 539, 542 [Supreme

---

[7]    Whether a felony-murder special-circumstance finding made before *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 precludes a defendant from making a prima facie showing of eligibility for relief under section 1170.95 is pending before the Supreme Court in *People v. Strong*, review granted March 10, 2021, S266606.

Court has prescribed "a fact-intensive and individualized inquiry" to determine whether the evidence demonstrates reckless indifference and major participation].)

Here, contrary to the superior court's finding and the Attorney General's argument on appeal, although there is evidence Talmadge could still be convicted of murder under the felony-murder rule, the record of conviction does not establish as a matter of law—that is, without weighing the evidence and engaging in factfinding—that he is ineligible for resentencing as a major participant in the residential burglary and robbery who acted with reckless indifference to human life. (See *Lewis*, *supra*, 11 Cal.5th at p. 974 ["at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion'"]; *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 ["the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues"].)[8]

As we noted in our opinion on direct appeal, the trial record lacked evidence as to whether Sheard or Talmadge was the actual killer. Nor does the record reveal what actually happened inside Mills's house on the night of her murder. Indeed, the superior court repeatedly stated, as Talmadge's counsel had

[8] The Attorney General does not contend the superior court's additional ground for denying the petition—that "the court record supports a finding that petitioner aided and abetted the murder with the specific intent to kill"—was properly made at the prima facie stage of a section 1170.95 proceeding.

15

argued, we simply do not know. Both men may have been directly involved in beating Mills and then placing her in the bathtub with a heavy weight on top of her; one may have done the actual killing while the other assisted him in a less direct manner; or one of the men may have killed Mills while the other was elsewhere in the house searching for valuables or attempting to unlock the safe or outside loading the firearms into the trunk of Mills's car. Yet the superior court, in what it characterized as a reasonable inference, made a finding on this question, as it did on the other points necessary to support its decision that Talmadge was ineligible for resentencing relief: "[O]ne of the reasonable inferences that we can draw from this fact pattern is it took two of them to carry this woman to the bathtub and then drown her and then ultimately take a portable heater and put that on top of her. I believe that required the working together of two people, and so that is the inference I'm drawing." Although a moment later the court acknowledged it had no information about the victim's weight, rather than giving it pause, the court just added conjecture to its inference, speculating, "if there was a weight issue and she weighed a certain amount, 150, 160, 200, whatever it could be, that would add to the court's conclusion that a reasonable inference is that it would normally require two people to carry a woman from the place by the bloodstained sofa all the way into the bathroom."

Simply put, determining the forensic evidence together with circumstantial evidence are sufficient to support a finding beyond a reasonable doubt that, even if not the actual killer or an aider and abettor acting with express malice, Talmadge was a major participant in the burglary and robbery who engaged in those underlying felonies with reckless indifference to Mills's life,

16

requires a weighing of the evidence—factfinding—not permitted at the prima facie stage of the section 1170.95 process. Inferences from the evidence, even if reasonable, are not properly made before issuance of an order to show cause and an evidentiary hearing pursuant to section 1170.95, subdivision (d).

## DISPOSITION

The postjudgment order denying Talmadge's section 1170.95 petition is reversed.  On remand the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

17